UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JACQUELINE FERN LIPP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-CV-00173 JAR |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Jacqueline Fern Lipp's ("Lipp") application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.

### I. Background

On July 31, 2012, Lipp filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq., alleging disability beginning October 1, 1998 (Tr. 125-131). The Social Security Administration ("SSA") denied Lipp's claims on August 17, 2012 (Tr. 56-61). Lipp made a timely request for a hearing before an administrative law judge ("ALJ") (Tr. 62-65). After a hearing held on January 29, 2014 (Tr. 47-51) and continued to May 15, 2014 (Tr. 20-46), the ALJ issued a written decision on July 15, 2014, upholding the denial of benefits (Tr. 7-19). Lipp requested review of the ALJ's decision by the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Appeals Council (Tr. 5-6). On August 5, 2015, the Appeals Council denied her request for review (Tr. 1-4). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

Lipp filed this appeal on October 5, 2015 (Doc. 1). The Commissioner filed an Answer (Doc. 10). Lipp filed a Brief in Support of her Complaint (Doc. 12), the Commissioner filed a Brief in Support of the Answer (Doc. 16), and Lipp filed a Reply Brief (Doc. 17).

## II. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. The Hearing

At the administrative hearing, Lipp's counsel indicated that he had requested medical records from a pain management clinic, but had not yet received them. At counsel's request, the ALJ agreed to keep the record open for thirty days to allow counsel to acquire the records (Tr. 22-23). The ALJ then heard testimony from Lipp and Dr. Magrowski, a vocational expert.

#### 1. Lipp's testimony

Lipp was 61 years old at the time of the hearing and living with her husband and 13-year-old grandson (Tr. 24-25). She completed the tenth grade and has a GED; she has no additional professional or vocational training (Id.). She testified that she last worked full-time in 1998 as a machine operator at a factory (Tr. 25-26). In 2000, she worked as a part-time cook at a daycare for one week before the business closed (Tr. 27-28).

It was Lipp's testimony that her shoulder, neck, and back pain affected her ability to work as of December 31, 2003 (Tr. 29-30, 39). According to Lipp, prior to December 31, 2003, her doctor had not given her any specific limitations, and on a typical day, she would have done housework—including cooking, cleaning, and grocery shopping—but she did not have any other

2

activities (Tr. 30-31). It was Lipp's testimony that before December 31, 2003, "mainly [she] did a little at a time to get through some of the pain" (Tr. 30).

Lipp also testified that she first reported her back pain to Dr. Kraenzle, her primary care physician, having suffered for "a long, long time before it got to the point where [ibuprofen] wasn't helping anymore." (Tr. 29-30, 35). After taking an x-ray, Dr. Kraenzle recommended that Lipp try physical therapy (Tr. 35-36). Lipp testified that she participated in physical therapy for five or six weeks, but it made her symptoms worse; she "got to the point where [she] couldn't even make it, drive home from the physical therapist, [she] was in so much pain" (Tr. 36-37). Dr. Kraenzle then sent Lipp to a neurosurgeon. The neurosurgeon referred her to a pain management clinic, where she underwent a series of injections. The injections did not help her pain, and in December 2004, Lipp had her first surgery (Tr. 37-40). According to Lipp, the first surgery "didn't fix the problem" and "didn't help anything" (Tr. 33, 40). Lipp testified that, after her first surgery, she continued to suffer from back pain, leg pains, and "shooting pains" down her legs; that she was unable to put on her own socks; and that her husband "was more or less dressing [her]" (Tr. 33).

As of the May 15, 2014 hearing, none of Lipp's treating physicians had limited her activities, other than instructing her to "do what you can do." (Tr. 29). She testified that she still experiences back pain and "shooting pains in [her] bottom" (Tr. 40). Lipp is able to clean her house, although it usually takes her all day, working an hour or so at a time (Tr. 41). Lipp also testified that her pain continues to prevent her from performing a job, even if a job allowed her to sit intermittently and stand intermittently (Tr. 42). Lipp had stopped taking Vicodin a few weeks prior to the May 15, 2014 hearing, but was still taking muscle relaxers—which cause her fatigue but no other side effects—because her neck and shoulders were bothering her (Tr. 42-43).

3

## 2. Testimony of the Vocational Expert

Dr. Magrowski classified Lipp's past work as "a medium job" and "unskilled with an SVP of 2" (Tr. 45).

### B.     Medical Records

The ALJ summarized the medical records that had been submitted in evidence as of the date of the ALJ's decision at Tr. 14-15. Relevant medical records are discussed as part of the analysis.

### III.    Decision of the ALJ

On July 15, 2014, or sixty-one days after the hearing, the ALJ issued a decision denying Lipp's claim for benefits (Tr. 7-19). The ALJ first determined that Lipp met the insured status requirements of the Social Security Act through December 31, 2003 (Tr. 12). The ALJ then concluded that Lipp had not engaged in substantial gainful employment during the period from October 1, 1998, the alleged onset date of disability, through December 31, 2003, her date last insured (Id.). The ALJ next found that, as of her date last insured, Lipp had the medically determinable impairments of hypertension, low back pain, and hyperlipidemia; but that, at that time, no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-14). Thus, the ALJ concluded that Lipp had not been under a disability, as that term is defined in the Social Security Act, at any time between her alleged onset date through her date last insured (Tr. 16).

### IV.     Standards

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has

5

one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that she is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the Court considers

6

evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

### V.     Discussion

In her appeal of the Commissioner's decision, Lipp argues that the ALJ erred in finding that she was not disabled as of her date last insured (Doc. 12). According to Plaintiff, her testimony and the medical evidence of record were sufficient to establish that her back pain was disabling as of December 31, 2003. Lipp also argues that the ALJ erred by denying her claim without requesting her records from the pain management clinic, which she asserts would have been relevant to the severity of her pain and the extent of her limitations as of her date last insured (Id.). The Commissioner urges affirmance, arguing that the ALJ's decision is supported by substantial evidence, and that the duty to request the records from the pain management clinic

rested with Lipp, not the ALJ (Doc. 16). In reply, Lipp reiterates her argument that the evidence of record is sufficient to support a finding that she was disabled as of her date last insured (Doc. 17). It is undisputed that Lipp's date last insured was December 31, 2003, and that, to be entitled to benefits, she must establish that she was disabled prior to that date (Docs. 12 at 11; 16 at 3).

**Medical Evidence**

The medical records reflect that, between October 1997 and September 2004, Lipp was treated by Dr. Kraenzle, her primary care provider, on several occasions (Tr. 213-229). Notably, Lipp visited Dr. Kraenzle in August 2000 for the purpose of a pre-employment physical, and he noted that she was in good physical health (Tr. 224). Lipp also saw Dr. Kraenzle on January 26, 2004, less than one month after her date last insured, complaining of sinus drainage and headache, but not back pain (Tr. 216).

It is undisputed that Lipp did not report her lower back pain to Dr. Kraenzle until June 17, 2004, when she reported "recurrent right lower back [pain] secondary to increased activities." (Tr. 215; Docs. 16.2 at 4; 17.1 at 2).[2] At that time, Dr. Kraenzle observed that Lipp had direct spine tenderness and negative straight leg raise, diagnosed low back pain with possible sacroiliitis, and prescribed Vioxx and Skelaxin (Tr. 215). An x-ray revealed "[v]ery mild anterior endplate spurring at L3-4 and L4-5," and "[r]elative preservation of the intervertebral disc and lumbar vertebral body heights." (Tr. 235). During a September 13, 2004 follow-up appointment, Lipp reported a recurrence of back pain for which she was taking other-the-counter Tylenol, and stated that the Vioxx and Skelaxin had helped "somewhat." (Tr. 214). As relevant, Dr. Kraenzle diagnosed low back pain, and prescribed Skelaxin (Id.). During a September 27, 2004 follow-up appointment, Lipp reported that she had started physical therapy for her back on the advice of

---

[2] In their statements of facts, the parties identify Dr. O'Donnell as the physician to whom Lipp first reported her back pain; however, the record clearly indicates that she was treated by Dr. Kraenzle on June 17, 2004 (Tr. 215).

8

her neurosurgeon, that the physical therapy was starting to help, and that her back pain had improved (Tr. 213).

On December 15, 2004, Lipp underwent her first back surgery (Tr. 243-46). At that time, her surgeon, Dr. Kong-Woo Peter Yoon, noted that Lipp had a history of lower back pain with bilateral leg radiation, that her right side was worse than her left, that a myelogram revealed foraminal stenosis on her right side, and that there was "some mild stenosis on the left side because of diffuse disc bulge at L4-5." (Tr. 243). Dr. Yoon performed a second surgery in January 2006, a third surgery in May 2008, and a fourth surgery in November 2013 (Tr. 239-252).

The ALJ found that Lipp's lower back pain was a medically determinable impairment as of her date last insured, but that, as of that time, she did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months (Tr. 12-15). More specifically, the ALJ determined that Lipp's lower back pain could have been expected to produce the symptoms she alleged, but that her testimony as to the intensity, persistence and limiting effects of her symptoms was not entirely credible (Tr. 14). The ALJ found that Lipp's medical history was not consistent with her allegation of severe, disabling back pain (Tr. 15). The ALJ noted that Lipp's medical records showed that—although she had visited Dr. Kraenzle several times between October 1997 and September 2004—she did not report any back or neck pain until June 17, 2004, well after her date last insured (Tr. 14-15). The ALJ further noted that no treating or examining physician had ever placed any limitations on Lipp's activities, opined that she was disabled, or indicated that there is a medical reason for why her activities should be as limited as she alleged (Id.). The ALJ also noted that Lipp had maintained employment after her alleged onset date (for a week, as a part-time cook at a

9

daycare), and that she had only stopped working because the daycare closed, not for any medical reason (Id.). The ALJ concluded that Lipp's allegations of total disability were not supported by the weight of the evidence and were not credible (Id.). As such, the ALJ concluded that Lipp was not under a disability, as of her date last insured, and therefore was not entitled to benefits (Tr. 15-16).

Initially, the Court is not persuaded by Lipp's argument that the ALJ erred by failing to request her records from the pain management clinic. While an ALJ has an independent duty to fully and fairly develop the administrative record, that duty is not endless, and an ALJ is not obligated to function as "claimant's substitute counsel." Whitman v. Colvin, 762 F.3d 701, 707 (8th Cir. 2014) (quoting Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994)); see also Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013) ("Ultimately the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment."). The Court has authority to remand cases to the Commissioner "to consider new evidence, but 'only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence in the record in a prior proceeding.'" Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir. 1994). "To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which the benefits were denied, and there must be a reasonable likelihood that it would have changed the [Commissioner's] decision." Id. (quoting Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993)).

In Hinchey, the ALJ agreed to keep the record open after the administrative hearing to allow the claimant time to acquire additional evidence regarding her condition as of her date last insured, which had expired ten years prior to the hearing; and claimant's counsel represented to

10

the ALJ that he would get the additional evidence. Id. at 430-33. Six months later, the claimant had not yet submitted any additional evidence, and the ALJ issued a decision denying benefits. Id. at 433. On appeal, the Eighth Circuit Court of Appeals rejected the claimant's argument that the case should be remanded to the Commissioner for consideration of the additional evidence, which counsel had since obtained, concluding that she had not shown good case for her failure to submit the additional evidence earlier in the proceeding. More specifically, the Eighth Circuit noted that the claimant had the opportunity to obtain the evidence before the administrative record was closed, and failed to do so without adequate explanation. Id.

Here, during the administrative hearing, Lipp's counsel informed the ALJ that he had already requested her records from the pain clinic, and the ALJ granted counsel's request that the record be kept open for thirty days to allow counsel time to obtain the records and to supplement the record accordingly. Lipp did not submit her pain clinic records to the ALJ within the time she was allowed (or the next thirty-one days that passed before the ALJ issued a decision); she did not seek to supplement the record before the Appeals Council after the ALJ denied her claim; and she also has not submitted her pain clinic records to this Court. Moreover, Lipp has provided no explanation for why she has not yet acquired her records from the pain management clinic, or why she was unable to do so before the administrative record closed. Thus, she has failed to show good cause for her failure to submit her pain clinic records during the pendency of her administrative proceeding. Also, in light of her failure to submit her pain clinic records to this Court for review, Lipp has not shown that the additional evidence is material, i.e., that it would have influenced the ALJ's conclusion that she was not disabled prior to December 31, 2003. See id. (for new evidence to be material, there must be a reasonable likelihood that it would have changed the Commissioner's decision); see also Shannon v. Chafer, 54 F.3d 484, 488 (8th Cir.

11

1995) (reversal due to an ALJ's failure to develop the record is warranted only where such failure is unfair or prejudicial). As such, the Court concludes that the ALJ did not err by denying Lipp's application for disability benefits without first requesting her records from the pain clinic.

Upon careful review of the record, the Court further concludes that the ALJ's decision is supported by substantial evidence. See Pate–Fires, 564 F.3d at 942 (standard of review). More specifically, the Court concludes that substantial evidence supports the ALJ's determination that Lipp's medical history was inconsistent with her allegation that she suffered severe, disabling lower back pain as of December 31, 2013, her date last insured. See Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014) (citing Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997)) (if social security disability claimant is not insured for Title II purposes, the Court only considers the claimant's medical condition as of her date last insured); Moore v. Astrue, 572 F.3d 520, 522 (8th Cir. 2009) (citing Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006)) (to be entitled to benefits, social security claimant must establish that she was disabled prior to the expiration of her insured status). Notably, although she was frequently treated for other ailments during the relevant time period including a visit one month after her date last insured, Lipp did not report back pain to her treating physician until June 2004, or nearly six months after her date last insured. See Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) (ALJ may discredit a claimant's subjective pain complaints if the claimant did not seek regular medical treatment for the allegedly disabling condition; "[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [the claimant] would have sought regular medical treatment."). Therefore, the Court concludes that substantial evidence supports the ALJ's conclusion that Lipp was not under a disability, as that term is defined in the Social Security Act, as of her date last insured.

## VI. Conclusion

For the foregoing reasons, the Court finds there is substantial evidence in the record to support the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's complaint is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 29th day of March, 2016.

*/s/ John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

13